**LABORERS COMBINED FUNDS OF WESTERN PENNSYLVANIA,** as agent for Paul Quarantillo and John C. Busse, trustees ad litem, Laborers' District Council of Western Pennsylvania Welfare and Pension Funds, the Construction Industry Advancement Program of Western Pa Fund and the Laborers' District Council of Western Pennsylvania and its affiliated local unions, Plaintiff,

v.

**Todd J. CIOPPA, Defendant.**

No. 01–CV–1631.

United States District Court, W.D. Pennsylvania.

April 6, 2004.

---

Jeffrey J. Leech, Joseph P. Milcoff, Tucker Arensberg, Pittsburgh, PA, for plaintiff.

Vincent Baginski, Pittsburgh, PA, for defendant.

## MEMORANDUM

STANDISH, District Judge.

### I

In this civil action, plaintiff, Laborers Combined Funds of Western Pennsylvania ("Combined Funds"), asserts a claim against defendant, Todd J. Cioppa ("Cioppa"), under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, as well as a claim for conversion under state law. Presently before the court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the Combined Funds' motion for summary judgment will be granted and Cioppa's cross-motion for summary judgment will be denied.

### II

For purposes of the present motions, the following facts are undisputed.

On June 1, 1999, American Standard Environmental, Inc. ("American Standard"), a Pennsylvania corporation that was engaged in the construction business, entered into a collective bargaining agreement ("Labor Agreement") with the Laborers' District Council of Western Pennsylvania, a labor union representing Local Union Nos. 286, 323, 373, 833, 910, 952, 964 and 1451 ("Laborers' Union"). Cioppa, who has been the sole shareholder, director and officer of American Standard since January, 1999, signed the Labor Agreement on American Standard's behalf, and John McManus, a representative of Construction General Laborers Local Union No. 373, signed the Labor Agreement on behalf of the Laborers' Union. (Pl's Motion for S.J., Exh. B, pp. 72–73, Exh. D, pp. 7, 10).

Under the terms of the Labor Agreement, American Standard was obligated to make payments to the Laborers' Union Welfare Fund, the Laborer's Union Pension Fund and The Construction Industry Advancement Program of Western Pennsylvania Fund on behalf of its laborers, and the payments were to be made to the Combined Funds.[1] In addition, under the terms of the Labor Agreement, American Standard was obligated to withhold monies from its laborers' wages for union dues and political action contributions, and, between May 1999 and May 2001, American Standard withheld wages for these purposes. The required monthly payments, together with a monthly remittance report, were to be submitted to the Combined Funds by the 30th day of each month for the amounts due for the preceding month's operations. (Complaint, ¶ 4, Amended Answer, ¶ 4, Pl's Motion for S.J., Exh. A, ¶ 3, Exh. B, pp. 47–55, Exh. D, p. 31).

Under the terms of the Trust Agreement for the Laborers' Union Pension Fund ("Pension Fund Trust Agreement") and the Agreement and Declaration of Trust for the Laborers' Union Welfare Fund ("Welfare Fund Trust Agreement"), which are incorporated into the Labor Agreement, American Standard had no right, title or interest in any payments to the Combined Funds that were made on behalf of its laborers for pension and welfare benefits. Specifically, Article XII, § 14 of the Pension Fund Trust Agreement and Article VI, § 14 of the Welfare

---

1. The Combined Funds is a non-profit corporation. In addition to collecting employer payments for pension benefits, welfare benefits and industry training programs pursuant to the terms of the Labor Agreement, the Combined Funds is responsible for collecting the wages withheld from participating employees for union dues and political action contributions.

Fund Trust Agreement, which are identical, provide:

> SECTION 14. No Employer obligated to pay contributions shall have any right, title or interest to any sum payable by such Employer to the Fund, but not yet paid into the Fund. Title to all monies paid into and/or due and owing the Fund shall be vested in the Fund and/or its Trustees.

(Pl's Motion for S.J., Exh. C).

As to The Construction Industry Advancement Program of Western Pennsylvania Fund, under the terms of the Labor Agreement, American Standard had no right, title or interest in the payments to, or monies in, such fund. Article XIV, § 5 of the Labor Agreement provides:

> SECTION 5. Payments to The [Construction Industry Advancement Program of Western Pennsylvania] fund shall be used only for the purposes indicated in Section 4. The Pension Fund, the Health and Welfare Fund, the Union, individual Employers and their employees shall have no right, title or interest in any of the payments to or monies in The [Construction Industry Advancement Program of Western Pennsylvania] Fund, nor shall they, or any of them be entitled to receive, directly or indirectly, any portion thereof.

(Pl's Motion for S.J., Exh. B, p. 51).

Cioppa signed the monthly remittance reports which American Standard was required to submit to the Combined Funds under the Labor Agreement.[2] Cioppa also had sole authority for signing construction contracts and hiring accountants and legal counsel on behalf of American Standard. Further, from January 1999 to August or September 2001, Cioppa had sole authority for determining which creditors of American Standard would be paid.[3] (Pl's Motion for S.J., Exh. D, pp. 10, 13–16).

As the President and Chief Executive Officer (CEO) of American Standard, Cioppa was, and is, responsible for the collection of all monies payable to American Standard as a result of the labor performed by American Standard's laborers who were covered under the Labor Agreement. In addition, Cioppa was responsible for submitting the monthly remittance reports, together with the payments for pension and welfare benefits and the wage deductions for union dues and political action contributions, to the Combined Funds. (Complaint, ¶¶ 11–12, Amended Answer, ¶¶ 11–12). For an extended period of time, Cioppa failed to submit the payments for pension and welfare benefits and the wage deductions for union dues and political action contributions that became due and owing to the Combined Funds on behalf of American Standard's laborers. (Pl's Motion for S.J., Exh. A).

### III

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Childers v. Joseph*, 842 F.2d 689 (3d Cir.1988). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon

---

**2.** The last monthly remittance report submitted to the Combined Funds by American Standard was for the month of May 2001. American Standard has not performed any work since June 2001, other than to finish small projects that had been under contract and were backlogged. (Pl's Motion for S.J., Exh. D, pp. 16–17).

**3.** Apparently, in August or September 2001, Enterprise Bank took over responsibility for paying American Standard's creditors pursuant to a forbearance agreement. (Pl's Motion for S.J., Exh. D, p. 15).

motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial responsibility for demonstrating the absence of a genuine issue of material fact, and this burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Id.* However, once the moving party has properly supported its motion, the opponent must provide some evidence that a question of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet this burden, the non-moving party may not rest upon mere allegations, general denials or vague statements. *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993). Rather, the non-moving party must go beyond the pleadings and show, through affidavits or by the depositions, answers to interrogatories and admissions on file, the specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A court considering summary judgment must then examine the entire record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Keeping this standard in mind, the court turns to the parties' cross-motions for summary judgment.

## IV

*ERISA Claim*

Section 3(21)(A) of ERISA defines the term "fiduciary" as follows:

## § 1002. Definitions

\*     \*     \*     \*     \*     \*

(21)(A) ..., a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or *exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.... (emphasis added).

29 U.S.C. § 1002(21)(A).

Pursuant to ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries...." 29 U.S.C. § 1104(a)(1)(A)(I). ERISA also provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries [by ERISA] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach...." 29 U.S.C. § 1009(a).

The Combined Funds assert that Cioppa is a fiduciary under Section 3(21)(A) of ERISA with respect to the Laborers' Union pension and welfare benefit plans because he exercised authority and control over disposition of the plans' assets; that he breached his fiduciary duties under ERISA when he failed to make payments to the Combined Funds on behalf of American Standard's laborers for the pension and welfare benefits due and owing under the Labor Agreement; and that, as a re-

sult, he is personally liable for the delinquent payments.[4] On the other hand, Cioppa asserts that he is not an ERISA fiduciary because the delinquent payments due and owing to the Combined Funds are not "plan assets", and that, therefore, personal liability may not be imposed upon him for the delinquent payments.

To determine whether Cioppa is a fiduciary under ERISA, the court must first determine whether the delinquent payments due and owing to the Combined Funds on behalf of American Standard's laborers for pension and welfare benefits are "plan assets." If they are not plan assets, Cioppa would not fall within the definition of "fiduciary" in Section 3(21)(A) of ERISA.

In *PMTA–ILA Containerization Fund v. Rose,* 1995 WL 461269 (E.D.Pa. Aug.2, 1995), a case that is factually similar to the present case, the plaintiff, an employee benefit plan, sought to impose personal liability for delinquent contributions to the plan on the defendant, who was president and chief executive officer of the Northern Shipping Company, under ERISA, asserting that the defendant was a fiduciary of the plan, and that the defendant violated certain duties he owed to the plan and its employee participants by using plan assets to pay various debts and obligations of the Northern Shipping Company. The parties filed cross-motions for summary judgment, and the district court granted the plaintiff's motion and denied the defendant's motion. With respect to the defendant's argument that he was not a fiduciary, and that, therefore, he could not be personally

liable to the employee benefit plan under ERISA, the district court stated:

\*      \*      \*      \*      \*      \*

A person is an ERISA fiduciary if he exercises control or authority over the plan's assets, management or administration. *Curcio v. John Hancock Mutual Life Insurance Company,* 33 F.3d 226, 233 (3d Cir.1994). To determine whether Rose was a fiduciary, the court must determine: 1) whether the unpaid contributions were plan assets; and 2) whether Rose exercised discretionary control or authority over such assets.

a.  The delinquent contributions were plan assets.

The ERISA statute does not define what constitutes "plan assets." When faced with the problem of defining plan assets, the court must look to the agreement which created the employee benefit plan. For example, in *Galgay v. Gangloff,* 677 F.Supp. 295 (M.D.Pa. 1987), *aff'd,* 932 F.2d 959 (3d Cir.1991), the plaintiff sued the CEO of a corporation who failed to make contributions to an ERISA fund. The defendant claimed the fund never actually possessed the money; therefore, delinquent contributions were not plan assets. The plaintiff conversely argued that as soon as the funds became due and owing, they legally belonged to the fund. Therefore, defendant's failure to pay them was a misuse of plan assets.

To resolve the issue, the court looked to the agreement that created the ERISA fund. The contract stated that "title to all monies paid into and/or *due and owing* said fund *shall be vested in*

---

**4.**  Cioppa does not dispute that the Laborers' Union Pension Fund, the Laborers' Union Welfare Fund and The Construction Industry Advancement Program of Western Pennsylvania Fund are funds that are covered by ERISA. In fact, as discussed *infra,* Cioppa erroneously contends that ERISA applies to the wages withheld from American Standard's laborers for union dues and political action contributions.

and remain exclusively in the trustees of the fund." *Id.* at 301. [emphasis added]. Based on this language, the court held that once the employer's obligation to contribute arose, the money that was owed became an asset of the plan. If the employer was delinquent in making such contributions, the unpaid monies were considered plan assets, and not merely receivables. *Id.* at 302; *see also Connors v. Paybra Mining Company*, 807 F.Supp. 1242 (S.D.W.V.1992) (where the agreement vested title in the ERISA fund for all "due and owing" contributions, delinquent contributions were plan assets).

In the present case, the Containerization Agreement clearly states:

> Title to all of the money, property and income paid into, acquired by, or *accrued* to the fund shall be vested in and remain exclusively in the board of trustees of the fund...

*See* Containerization Agreement (emphasis added). This language is strikingly similar to that found in the *Galgay* and *Connors* agreements. The sole difference is the Agreement's use of "accrued" instead of "due and owing". However, the two terms have the same meaning. *Black's Law Dictionary* 20 (6th Ed.1990). It is therefore obvious that as soon as Northern's contributions became due and owing, title to the unpaid contributions vested in the Fund.

Accordingly, the unpaid contributions were plan assets.

\* \* \* \* \* \*

1995 WL 461269, at \*3–4.

■ A review of the Pension Fund Trust Agreement and the Welfare Fund Trust Agreement in the present case mandates the same conclusion.[5] Specifically, as noted previously, Article XII, § 14 of the Pension Fund Trust Agreement and Article VI, § 14 of the Welfare Fund Trust Agreement contain the "due and owing" language relied upon by the courts in *PMTA–ILA, Connors* and *Galgay* to conclude that delinquent payments to employee benefit plans are "plan assets." [6]

Regarding Cioppa's reliance on the decision of the district court in *Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*, 140 F.Supp.2d 447 (E.D.Pa.2001), to support his argument that the delinquent payments in this case are not plan assets, the court concludes that such reliance is misplaced. In *Lutyk*, the administrator of an employee benefit plan brought an ERISA action against the sole shareholder of a bankrupt employer for his alleged failure to make payments to the plan. Although the district court held that the delinquent payments that were at issue in that case were not "plan assets" within the meaning of ERISA,[7] this holding was

---

5. With regard to the Construction Industry Advancement Program of Western Pennsylvania Fund, Cioppa cannot dispute the fact that neither he nor American Standard had any right to the payments due and owing to this fund based on Article XIV, § 5 of the Labor Agreement.

6. The court notes that its conclusion in this regard is also in accord with the decision of the Honorable D. Brooks Smith, former Chief Judge of this court, in *Laborers' Combined Funds of Western Pennsylvania v. Parkins*, Civil Action Nos. 01–79 and 01–80 (W.D.Pa.June

5, 2002). Construing the language in the trust agreements at issue in this case, Judge Smith concluded that delinquent payments to the Combined Funds were plan assets within the meaning of ERISA.

7. Although the district court in *Lutyk* concluded that the delinquent payments in that case were not plan assets within the meaning of ERISA, the court nevertheless imposed personal liability on the sole shareholder of the bankrupt employer because the circumstances justified piercing the corporate veil.

based on the failure of the trust document creating the plan to clearly include "due and owing" payments as plan assets. In fact, as noted by the Combined Funds, the court in *Lutyk* reaffirmed the decisions in *PMTA–ILA,*·*Connors* and *Galgay* in which the courts held that, based on the "due and owing" or "accrued" language in the trust documents creating the plans in those cases, the delinquent payments at issue were plan assets.[8] (Pl's Brief in Opp., pp. 8–9).

As to Cioppa's argument that he is not liable as an ERISA fiduciary for the delinquent payments to the Combined Funds because of its failure to provide him with copies of the Pension Fund Trust Agreement and the Welfare Fund Trust Agreement as they existed on June 1, 1999, the date he signed the Labor Agreement on American Standard's behalf, the court finds this argument unpersuasive. The Pension Fund Trust Agreement and the Welfare Fund Trust Agreement as they existed on June 1, 1999 would be material to the disposition of the parties' cross-motions for summary judgment only if Article XII, § 14 of the Pension Fund Trust Agreement and Article VI, § 14 of the Welfare Fund Trust Agreement had been amended to add the "due and owing" language following Cioppa's execution of the Labor Agreement on behalf of American Standard. However, Cioppa does not even raise this contention, and the Combined Funds has offered evidence that those provisions were in full force and effect on June 1, 1999, and that those provisions have not been amended since that date. (Pl's Motion for S.J., Exh. A, ¶ 6).

Finally, regarding Cioppa's argument that the Pension Fund Trust Agreement and the Welfare Fund Trust Agreement are void because he was "unaware and/or ignorant" as to their existence, and that, therefore, he cannot be held liable as an ERISA fiduciary (Df's Brief in Supp., pp. 9–10), the court agrees with the Combined Funds that this argument also is unavailing. As noted by the Combined Funds, this argument "is merely a claim that, because [Cioppa] did not read the collective bargaining agreement, he cannot be bound by its terms." However, Cioppa had a duty to read the Labor Agreement before signing it, and his failure to do so will not excuse ignorance of the Labor Agreement's terms, including its incorporation of the Pension Fund Trust Agreement and the Welfare Fund Trust Agreement. (Pl's Brief in Opp., p. 7).

To impose personal liability on Cioppa for the delinquent payments to the Combined Funds for pension and welfare benefits as an ERISA fiduciary, the court must next determine whether Cioppa exercised authority or control over the disposition of plan assets. In this connection, during his deposition, Cioppa testified that, since January 1999, he has been the sole shareholder, director and officer of American Standard; that, as such, he was responsible for collecting all monies payable to American Standard as a result of the labor performed by its employees; that he was responsible for submitting the monthly remittance reports, together with the payments for pension and welfare benefits, to the Combined Funds; that, between January 1999 and August or September 2001, he had sole authority for determining

---

**8.** The Combined Funds further note that Cioppa's argument that the language of the trust agreements in the present case is conflicting or ambiguous with regard to what constitutes plan assets is based on an apparent misinterpretation of two provisions having no relation to American Standard's obligation to make fringe benefit contributions to the Combined Funds on behalf of its laborers, and the court agrees. *See* Pl's Brief in Opp., pp. 9–12.

which creditors of American Standard would be paid; and that for an extended period of time, American Standard failed to submit the payments for pension and welfare benefits due and owing to the Combined Funds on behalf of its laborers. Based on this testimony, it is clear that Cioppa had authority and control over the disposition of plan assets. Thus, he is a fiduciary under ERISA.

Finally, the court must determine whether Cioppa breached his fiduciary duties under ERISA, and the court readily concludes that he did. Because plan assets in the form of due and owing payments for pension and welfare benefits were either diverted for other purposes or simply not paid by Cioppa, it is clear that the Combined Funds has demonstrated a breach of the fiduciary duties imposed on Cioppa under ERISA. Simply put, it is undisputed that Cioppa did not act "solely in the interests of the participants and beneficiaries" of the Combined Funds. 29 U.S.C. § 1104(a)(1). Accordingly, judgment will be entered in favor of the Combined Funds on its ERISA claim as a matter of law.

B

*Conversion Claim*

■ Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. *See Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112, 114 (1987). In Pennsylvania, under the "participation" theory, a corporate officer who takes part in the commission of a tort by the corporation is personally liable for that tort. *See Voest–Alpine Trading USA Corp. v. Vantage Steel Corp.,* 919 F.2d 206, 217 (3d Cir.1990). The Combined Funds assert that, under the participation theory, Cioppa, as the sole shareholder, director and

officer of American Standard, is liable for conversion of the wages withheld from American Standard's laborers, but not paid to the Combined Funds, for union dues and political action contributions. The court agrees.

As the President and CEO of American Standard, Cioppa was personally responsible for submitting to the Combined Funds, on a monthly basis, the wages withheld from American Standard's laborers for union dues and political action contributions. During his deposition in this case, Cioppa admitted that, pursuant to the Labor Agreement, monies were deducted from the wages of American Standard's laborers for union dues and political action contributions between May 1999 and May 2001. However, the withheld wages were not submitted to the Combined Funds, and, regardless of what he did with the withheld wages, Cioppa clearly deprived others of their right of property.

■ Cioppa's assertion that the Combined Funds' conversion claim is preempted by ERISA is meritless. The wages withheld for union dues and political action contributions do not constitute employee benefit plans under ERISA. *See* 29 U.S.C. §§ 1002(1), (2) and (3). As noted by the Combined Funds, it is limited to a conversion theory to recover the wages withheld from American Standard's laborers for union dues and political action contributions "precisely because the wage deductions *do not* relate to an employee benefit plan." (Pl's Brief in Opp., p. 16 n. 7). If the withheld wages did relate to an employee benefit plan, they would be recoverable under ERISA. The wage deductions collected by the Combined Funds on a monthly basis from participating union contractors are simply forwarded by the Combined Funds to the Laborers' Union and the political action committees.

(Pl's Documents Filed in Opp., Exh. 5, pp. 34–35). Under the circumstances, judgment will be entered in favor of the Combined Funds on its conversion claim as a matter of law.

## V

With respect to the ERISA claim, the Combined Funds seek the delinquent payments for pension and welfare benefits, interest on the delinquent payments, liquidated damages, attorneys' fees and costs under 29 U.S.C. § 1132(g)(2). As to the conversion claim, the Combined Funds seek the monies withheld from the wages of American Standard's laborers for union dues and political action contributions but not paid to the Combined Funds, together with interest on the withheld wages. A hearing will be scheduled promptly to determine the amount of money to which the Combined Funds is entitled as a result of Cioppa's breach of his fiduciary duties under ERISA and his conversion of the withheld wages.

An order follows.

### ORDER

AND NOW, this 5th day of April, 2004, in accordance with the foregoing memorandum, it is hereby ORDERED as follows:

1. The motion of plaintiff for summary judgment, pursuant to Fed.R.Civ.P. 56, is granted as to the liability of defendant on the claims asserted in the complaint.

2. The cross-motion of defendant for summary judgment, pursuant to Fed. R.Civ.P. 56, is denied.