## United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3421

_____

Karen Brake

*Plaintiff - Appellant*

v.

The Hutchinson Technology Incorporated Group Disability Income Insurance Plan

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 7, 2014
Filed: December 29, 2014

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Karen Brake appeals the district court's[1] adverse grant of summary judgment in favor of her employer's group disability plan in this Employee Retirement Income

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

Security Act of 1974, 29 U.S.C. §§ 1001 et seq., (ERISA) denial-of-enhanced benefits case. We affirm.

## I.    BACKGROUND

In 1988, Brake began working at Hutchinson Technology Incorporated (Hutchinson) in Sioux Falls, South Dakota. She was diagnosed with multiple sclerosis (MS) in 2000, but continued to work for Hutchinson until 2008. Hutchinson, which was based out of Minnesota,[2] provided a group disability insurance plan for its employees and the plan provided long-term disability (LTD) insurance coverage and benefits to eligible employees. Brake first purchased disability insurance in 1988, but the current plan at issue became effective April 1, 2005, and was issued by CNA Group Life Assurance Company, which later changed its name to Hartford Life Group Insurance Company. In the group disability plan, Hutchinson, as the plan administrator, ceded sole discretionary authority to Hartford to construe the terms of the plan and make eligibility determinations. Brake was insured under the core plan (which provided benefits of up to 50% of an employee's monthly earnings or $7000, whichever was less), but on April 1, 2007, Brake purchased an option for "buy-up" coverage (which provided benefits of up to 70% of monthly income or $10,000, whichever was less). The buy-up provisions contained a pre-existing condition limitation which excluded buy-up coverage for a particular disability if medical treatment for that condition was rendered within twelve months prior to the effective date of the buy-up coverage. The pre-existing limitation dropped off after the buy-up coverage was in existence for a year without a disability claim. In Brake's case, this meant that if Brake was treated for her MS condition between April 1, 2006, and April 1, 2007, and then became disabled as a result of her MS prior to April 1, 2008, the

---

[2]In one place, the plan states that it is "governed by the laws of the governing jurisdiction;" in another, it states that the plan is "effective in the State of Minnesota and governed by the laws thereof." As discussed in our analysis, we agree with the district court's assessment that Minnesota is the governing jurisdiction.

pre-existing condition exclusion would limit her benefits to the core plan coverage. Of course, this is exactly what happened.

Brake began experiencing problems with her MS in April 2007, and started working part-time on July 26, 2007. She received short-term disability benefits from a separate short-term disability plan at that time. On March 25, 2008, she stopped working at Hutchinson entirely. In May 2008, she applied for LTD benefits, stating her onset of disability as July 27, 2007. In August 2008, Hartford informed her that her LTD benefits were approved, but not payable at the buy-up plan rate, because her July 2007 disability was due to a pre-existing medical condition (MS) that she received treatment for within twelve months prior to purchasing buy-up coverage on April 1, 2007. Brake contacted Hartford and explained that her two doctor visits during the twelve-month time frame were for a yearly pap smear and a yearly routine MRI which she had received every year since her 2000 MS diagnosis. Hartford, in reply, pointed to these same medical records which indicated that Brake was increasingly less able to manage her MS conditions during the 12-month time-frame prior to the purchase of buy-up coverage. Brake exhausted her administrative remedies with Hartford and brought this action pursuant to ERISA.

The district court, noting the discretionary language that the plan gave Hartford to construe the terms of the plan, applied an abuse-of-discretion standard of review to the decision to deny benefits. The district court found that Hartford did not abuse its discretion in allowing regular core-plan benefits but denying buy-up benefits due to the pre-existing condition provision. The court further found that state statutes in South Dakota or Minnesota did not alter this conclusion. Brake appeals.

## II.    DISCUSSION

We review the district court's summary judgment decision de novo, applying the same standard of review to the plan administrator's decision that the district court

did.  Riddell v. UNUM Life Ins. Co. of Am., 457 F.3d 861, 864 (8th Cir. 2006).  Because there is language in the plan granting the plan administrator discretionary authority to construe the terms of the plan, we apply an abuse-of-discretion standard of review to the plan administrator's decision to deny benefits and must affirm the plan administrator's decision if it is reasonable.  Kutten v. Sun Life Assurance Co. of Can., 759 F.3d 942, 944 (8th Cir. 2014).  Also because Hartford is both the insurer and has been given authority to administer the plan, we take this inherent financial conflict of interest into account in deciding whether an abuse of discretion has occurred.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 116-17 (2008).

Brake points us to a South Dakota Department of Insurance administrative ruling which states in part that "[a] discretionary clause is not permitted in any individual or group health policy."  Brake argues that this state administrative ruling negates the discretionary language in the plan and mandates a de novo standard of review.  See Standard Ins. Co. v. Morrison, 584 F.3d 837, 844-45 (9th Cir. 2009) (holding that practice of disapproving discretionary clauses by state Commissioner of Insurance was not preempted by ERISA's exclusive remedial scheme); Am. Council of Life Insurers v. Ross, 558 F.3d 600, 608-09 (6th Cir. 2009) (upholding state rules prohibiting insurers from marketing products containing discretionary clauses).  Although ERISA preemption is generally broad, state statutes or regulations that regulate insurance are "saved" from preemption under 29 U.S.C. § 1144(b)(2)(A).[3]  Hutchinson does not argue that the South Dakota statute is preempted; instead it argues that Minnesota, not South Dakota, law applies to the extent that federal law does not.  Hutchinson also argues that the regulation does not apply to Brake because

---

[3]The Supreme Court has set forth a two-part test to determine whether state laws regulating insurance are saved from preemption.  A state insurance statute or regulation is not preempted if it (1) is "specifically directed toward entities engaged in insurance" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured."  Ky. Ass'n of Heath Plans, Inc. v. Miller, 538 U.S. 329, 342 (2003).

the South Dakota administrative ruling expressly states that it applies only to policies issued or renewed after June 30, 2008, well after Brake became disabled and made a claim for benefits.

As noted, the plan language states that it is governed by the laws of Minnesota, when applicable and not otherwise governed by federal ERISA law. "Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1149 (11th Cir. 2001) (quotation omitted). We find nothing unreasonable or fundamentally unfair about enforcing the plan's Minnesota choice-of-law provision. The policy was written for a Minnesota corporation and was issued to Hutchinson in Minnesota. See Hamilton v. Standard Ins. Co., 516 F.3d 1069, 1073 (8th Cir. 2008) (holding that when an ERISA benefit plan is a group employment plan as opposed to a single policy, it is "issued" to the employer rather than each individual employee). Further, any argument about the fairness of not applying South Dakota law is undermined by the administrative ruling's limitation that it only applies to policies issued or renewed after June 30, 2008, well after all of the relevant events that occurred in the instant case. Accordingly, Brake's argument advocating a de novo standard of review based upon a South Dakota Department of Insurance regulation is without merit, and we apply the abuse-of-discretion standard of review.

With regard to the merits of the dispute, Brake cites both South Dakota and Minnesota laws that purportedly preclude health care plans from including pre-existing condition limitations. As we have already determined that Minnesota, not South Dakota, law applies, we briefly address Brake's argument based upon Minnesota law, which she identifies, for the first time in her reply brief, as Minnesota Statute § 60A.082. This statute provides that if a group disability insurer *changes*, the new insurer shall credit the period of time the person was covered by the prior plan for the purposes of satisfying a pre-existing condition, if the insured has maintained continuous coverage. Minn. Stat. § 60A.082. Brake admits she did not make an

argument to the district court based upon this statute, nor did she cite it in her opening brief. Furthermore, we note that by its very terms, the Minnesota statute does not apply here because the disability insurer has not changed. Instead, Brake purchased enhanced, "buy-up" benefits from the same insurer.

Thus, the state statutory scheme is irrelevant to the instant matter, and our only task is to determine if the plan's interpretation of the policy was reasonable. Our analysis of the reasonability of Hartford's plan interpretation is informed by the following factors: whether the decision is consistent with plan goals; whether it renders plan terms meaningless or is internally inconsistent; whether the decision complies with ERISA; whether the plan has previously interpreted the terms at issue consistently; and whether the interpretation was contrary to the clear language of the plan. See Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992) (listing a five-factor test for reviewing plan administrator's interpretation of plan language).

Brake contends that Hartford's decision was inconsistent with and contrary to the clear language of the plan. In this regard, she argues that although her disability arose out of a pre-existing condition, she is not excluded from buy-up plan coverage because as a long-term employee of Hutchinson, she was vested in all her rights under the regular long-term disability plan, and was effectively "grandfathered" in to coverage for the buy-up plan. In support, Brake cites to the following language of the Hartford policy: "You will receive credit toward satisfaction of the *Pre-existing Condition* time periods under the Policy for the time You were covered under the Prior Policy." This provision of the policy deals with providing plan participants credit for time spent satisfying a similar pre-existing condition limitation under a "prior policy." The buy-up plan, however, did not replace a prior policy for which Brake was insured, and Hartford reasonably determined that this provision does not apply to the facts of this case. Instead, Brake made a claim under a version of the plan with enhanced pay-out options. The enhanced pay-out plan provisions also contained

a window of pre-existing condition limitations. Brake unfortunately fell into that window. The fact that the enhanced pay-out provisions did not completely replace an existing policy is further demonstrated by the fact that Brake was not denied benefits altogether; she still receives long-term disability payments under the original core plan. Accordingly, we find that the decision, based upon the passage Brake cites, is not inconsistent or contrary to the clear language of the plan, but is instead compelled by the clear language of the plan.

Brake also makes a tolling argument, which although not completely clear, we gather is that as soon as one year had passed after she was last treated for MS during the window, she could then receive enhanced benefits under the buy-up plan. The district court held that while a "creative" reading of the policy language "could" support tolling instead of a complete bar, it did not have to be interpreted that way, and it was not unreasonable for the plan to interpret the provision the way it did. We agree and find that the plan's interpretation was consistent with the plan goals and was not contrary to the clear language of the plan.

## III.   CONCLUSION

We affirm the district court.

_____