# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3401

_____

Yafei Huang

*Plaintiff - Appellant*

v.

Life Insurance Company of North America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 9, 2015
Filed: September 3, 2015

_____

Before GRUENDER, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Yafei Huang appeals the district court's[1] grant of summary judgment on claims related to a denial of life insurance benefits by Life Insurance Company of North America ("LINA"), the ERISA plan administrator for her deceased husband's

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

former employer. LINA denied benefits, determining that Huang's deceased husband, Ping Liu, breached a requirement in the application by failing to notify LINA of a cancer diagnosis he received after applying for insurance but before a policy issued. In granting summary judgment, the district court held LINA's determination and the underlying interpretation of the plan were not unreasonable. We affirm the judgment of the district court.

I.

On November 12, 2009, Liu, a physician in a residency program, elected basic life insurance coverage from LINA through his employer's ERISA plan in the amount of his salary, $46,858.49. He also elected supplemental coverage in the amount of approximately four times his salary.

The summary plan description provided by Liu's employer stated, "To enroll for supplemental life insurance coverage, you must complete a separate Cigna enrollment form. *Please note*: evidence of good health may be required to enroll."[2] The application for insurance was a short, 2 ½ page form containing several short health questions, notifying the applicant of a possible need for medical tests, and setting forth an ongoing change-of-health disclosure requirement.

A portion of the application entitled "Section A" sought "yes" or "no" answers and asked:

Within the last 5 years has the proposed insured been:

- diagnosed with any of the conditions shown in items A through J below,

---

[2]Emphasis in original. Cigna owns LINA.

- told by a medical professional he/she has or may have any of the conditions shown in items A through J below,
- or been treated by a medical professional for any of the conditions shown in items A through J below?

. . .

J.    Cancer, Tumor, Leukemia, Hodgkin's Disease, Polyps or Mole?

The final half page of the form contained two lines at the top for the applicant's name and social security number. Below those lines, a box with centered text stated, "◆◆◆ AGREEMENTS AND AUTHORIZATION◆◆◆" in six-point font, the same font used in the balance of the document. Beneath this boxed header the following text appeared:

> To the best of my knowledge and belief all written, telephonic and electronic info I gave is true and complete. I understand that my insurance will not go into effect unless I am actively at work on the effective date. I also understand that coverage for each of my dependents will not go into effect unless the person is not confined in a hospital or institution, or receiving certain medical treatment. The conditions for the requested insurance to be effective are described in the policy and certificate. The approval of this request by the Insurance Company is one of those conditions. I understand and agree that:
>
> (1)    This request will be a part of the policy that provides the insurance.
> (2)    I may need to provide more medical info.
> (3)    I may need to take medical tests and report the results to the Insurance Company.
> (4)    I must report any change in my health that happens before the insurance is effective.
> (5)    Requested insurance will not be effective for a person if the person does not meet the underwriting requirements on the date insurance is to be effective.

Liu and Huang both signed the third page shortly beneath this quoted material.

On December 14, 2009, approximately one month after submitting his application, Liu received a cancer diagnosis. On March 1, 2010, the insurance became effective. And, on April 23, 2010, Liu passed away.

Huang requested a payment of benefits under Liu's policies on May 15, 2010. On July 7, 2010, LINA paid Huang the basic life insurance benefit of $46,858.49. At that time, LINA asserted that an investigation was required prior to payment of supplemental benefits because Liu passed away less than two years after the insurance went into effect. LINA obtained and reviewed Liu's medical records, which revealed that Liu had been experiencing symptoms without a diagnosis for at least two months prior to submitting his November 12 application. It is undisputed LINA first received notice of Liu's cancer diagnosis during this review of medical records.

On January 19, 2011, LINA sent Huang a copy of Liu's application with a denial letter stating:

> The medical records received were reviewed by our Medical Underwriting Department to determine insurability on the date that the Evidence of Insurability form was completed. While the form was completed accurately at the time it was submitted, a diagnosis of cancer prior to the coverage approval date was not disclosed to Life Insurance Company of North America. The Evidence of Insurability Form states under the Agreement Authorization Section that any changes in your health prior to the insurance effective date must be reported. If the new diagnosis had been submitted, it would have resulted in a decision that Mr. Liu would not be insurable for additional life insurance.

On March 16, 2011, Huang notified LINA she intended to appeal the denial of benefits. In her notice, she requested, "a copy of the claims file," "all documents relied upon in denying . . . and evaluating his claim," and "a copy of the plan documents." On May 16, 2011, LINA provided the requested documents. On July

-4-

14, 2011, Huang filed an appeal, asserting that the denial of benefits was improper. She also asserted that she and Liu had allowed other insurance to lapse based on a representation from LINA that Liu could obtain the supplemental insurance benefits.

In response, LINA requested additional information about the alleged representation. Huang responded that Liu was told he would not have to provide evidence of good health or insurability, but she did not identify the person who made the alleged representation by name, job description, or title. She explained that, through her own employer, she had held $100,000 of life insurance on Liu and that, in reliance on the representation, she allowed the $100,000 of life insurance to lapse. She did not identify when the statement was made or when she allowed the other insurance to lapse. On March 20, 2012, LINA denied Huang's appeal.

Huang then filed a six-count suit in the district court. In Count 1, she sought reformation of particular plan language to bring the plan into compliance with Missouri law. In Count 2, she sought a payment of benefits under the supplemental policy. In Count 5, she alleged a breach of fiduciary duty and sought a $100,000 equitable surcharge representing harm in the form of the death benefit under the lapsed policy on Liu's life through Huang's employer.[3]

Huang did not contest the assertion that Liu failed to notify LINA of the cancer diagnosis he received between submission of his application and issuance of the policy. Rather, she argued LINA was precluded by Missouri law and plan language from relying on the disclosure requirement in the application because LINA had failed to provide Liu with a copy of the policy containing the application prior to Liu's death. Huang argued that Missouri law requires insurers to give insureds copies of their insurance applications prior to death as a means to allow the insureds to correct any misstatements that might later defeat coverage.

---

[3]Counts 3, 4, and 6 are not at issue in this appeal.

On her fiduciary-duty claim, Huang argued the alleged representation from the unnamed person at LINA caused her to allow the other insurance to lapse.  She also argued the application was presented in a format that was so misleading and generally difficult to understand that the application itself amounted to a breach of the plan administrator's fiduciary duty toward covered employees.

On cross motions for summary judgment, the district court ruled in favor of Huang on Count 1, finding that Missouri insurance law required that the plan language be changed as shown below:

> No statement will be used to deny or reduce benefits or as a defense to a  claim, unless a copy of the instrument containing the statement has been furnished to the ~~claimant~~ insured.  In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

The district court ruled in favor of LINA on all other claims.  Regarding Count 2, the claim for benefits under the policy, the district court extended deference to the ERISA plan administrator's (LINA's) interpretation of the plan.  The  court concluded LINA had interpreted the plan reasonably when determining that delivery of the application to Huang during the claims process satisfied the plan's delivery requirement.  In reaching this conclusion, the court noted that both the plan language and a Missouri statute governing the contents of insurance policies expressly permitted delivery of the application to "the beneficiary or representative."

Regarding Count 5, the breach-of-fiduciary-duty claim, the district court stated the representation, as described by Huang, remained vague: she did not identify the speaker or the date of the representation; she did not identify the date on which she allowed the other insurance to lapse; and she, "at most," made the vague assertion that someone at LINA had stated Liu would qualify for coverage if he submitted an application.  The court also concluded the representation was not actually untrue because Liu did qualify for coverage at the time he submitted the application.  The

denial of benefits was based on his later failure to satisfy an express condition of the application. The representation had accurately indicated an application was required, and Huang did not allege the representation had indicated there was an absence of a duty to comply with conditions in the application.

The district court held in the alternative that the representation was not material and reliance on the representation was unreasonable. In reaching this conclusion, the court described a representation as material "if there is 'a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding . . . benefits to which she might be entitled.'" Kalda v. Sioux Valley Physician Partners, Inc., 481 F.3d 639, 644 (8th Cir. 2007) (quoting Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 551 (6th Cir. 1999)). The district court found that, because the representation as described by Huang still made clear that an application was required, it would not have been reasonable to allow the other insurance to lapse without reviewing the application to see its requirements. The court concluded review of the application put Liu and Huang "on clear notice" that Liu "must report any change in [his] health status that happens before the insurance is effective."

Finally, the court found the format of the application sufficiently clear to reject Huang's formatting-based fiduciary-duty argument as a matter of law. Huang appeals the judgment as to Counts 2 and 5.

II.

We review the district court's summary judgment ruling de novo, including the question of "whether the district court applied the appropriate standard of review to the administrator's decision." Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 580 (8th Cir. 2008) (citation omitted).

On appeal, Huang raises three arguments. First, she argues the district court erred in deferring to LINA's interpretation of the plan finding the application could be relied upon to deny benefits. Second, she argues the district court erred in finding no misrepresentation or omissions upon which to base a breach of fiduciary duty. And third, she argues the district court erred in rejecting her claim that the font size and overall appearance of the application was so infirm and misleading as to amount to a breach of fiduciary duty.

A.      Interpretation of the Policy and Missouri Law

The ERISA plan for Liu's employer granted LINA "the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." When an ERISA plan grants the plan administrator discretion to interpret a plan, we generally review the interpretation and the resulting grant or denial of benefits only for an abuse of discretion. See Johnson v. United of Omaha Life Ins. Co., 775 F.3d 983, 986–87 (8th Cir. 2014). When the plan administrator is also the claims-paying entity, we take the financial conflict of interest into consideration when conducting our review. See Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan, 774 F.3d 1193, 1196 (8th Cir. 2014). The simple fact a conflict exists, however, does not eliminate the administrator's discretion or change our review of the administrator's decision to de novo review. See id. ("[W]e take this inherent financial conflict of interest into account in deciding whether an abuse of discretion has occurred."). Applying this deferential standard, we will not disturb the plan administrator's decision "if it is reasonable, that is, supported by substantial evidence . . . [which] means 'more than a scintilla but less than a preponderance.'" Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010) (citations omitted).

The reformed plan language as quoted above precludes the insurer from relying on a "statement" in an "instrument" unless a copy of that instrument is provided to

the insured. The plan also states, "In the event of death or legal incapacity, the beneficiary or representative must receive the copy." In light of this language and the absence of any express plan language requiring that the copy be provided to the insured prior to death, we conclude it was reasonable for LINA to find that delivery of the application to Huang during the claims process satisfied the plan language. Huang was Liu's personal representative as well as the beneficiary under the policy.

Huang nevertheless argues that the plan language requiring LINA to furnish a copy of the application to the representative or beneficiary is a duty in addition to, rather than a substitute for, the duty to furnish a copy to the insured himself prior to his death. To support this argument, Huang raises two related points. We find neither sufficient to show that LINA's interpretation is unreasonable.

First, Huang argues LINA interpreted only the original plan language, not the reformed plan language, and as such, there is no underlying decision to which we must defer. Had the district court's reformation under Count 1 effected a material change to the language at issue in the present dispute, we might agree. The change in the plan language, however, merely replaced the word "claimant" with the word "insured" as noted above. Using either the reformed or the original language, the next sentence in the plan permitted delivery of the application to a "beneficiary or representative." We, therefore, do not view the reformation as material to LINA's interpretation of the particular language at issue in this appeal. This reformation of the plan language does not permit us to amend our standard of review.

Second, Huang argues that LINA's interpretation of the plan language fails to comport with Missouri law, the purpose of the disclosure requirement, and caselaw from other states interpreting similar requirements. Specifically, Huang notes that ERISA does not preempt otherwise generally applicable state insurance law directed towards insurance companies and regulating the business of insurance. See, e.g., United of Omaha v. Bus. Men's Assurance Co. of Am., 104 F.3d 1034, 1040–41 (8th

Cir. 1997) (discussing application of the "savings clause" of 29 U.S.C. § 1144(b)(2)(A), which limits the scope of ERISA preemption). And, Huang cites Missouri Revised Statutes § 376.697(3) and Johnson v. Prudential Life Ins. Co., 519 S.W.2d 111 (Tex. 1975), for the proposition that delivery of an application to an insured must occur prior to the insured's death. According to Huang, the disclosure requirement is intended to permit an insured to correct errors that might later defeat coverage. Relying on Johnson, Huang asserts that LINA's interpretation of the plan unfairly permits insurers to catch unsuspecting policyholders by waiting silently, until the policyholder has died, to comb through the application for statements that might defeat coverage. See Johnson, 519 S.W.2d at 113 ("It has often been held that it is the underlying legislative intention to require that the insured have the material terms of the contract at hand during his lifetime in order that he might examine and correct any misrepresentations which have been made the basis of the insurance coverage.").

Looking first at section 376.697(3), we conclude the statute does not support Huang's argument. Rather, section 376.679(3) illustrates why LINA's interpretation of the plan is reasonable. The relevant language of section 376.697(3) provides, "no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person *or*, in the event of death or incapacity of the insured person, to his beneficiary or personal representative." (Emphasis added). Use of the word "or" plainly sets off delivery of the instrument to the representative as a permissible alternative duty, not merely as an additional duty. The plan language, in contrast, sets forth the duty to furnish the instrument in two separate sentences without use of the conjunction "or." Accordingly, the plan language at least arguably is ambiguous as to whether the duty to provide the instrument to the representative is an alternative duty or an additional duty. Given this arguable ambiguity, LINA exercised its discretion and interpreted the plan in a manner consistent with the statutory language.

-10-

Further, it is important to note that LINA indicated in its initial denial letter that Liu had completed the application completely and accurately. Liu did not receive his cancer diagnosis until after he submitted his application, and LINA at no time alleged that Liu's application itself contained any coverage-defeating statements. Therefore, Huang's policy argument, which is based on the need for an applicant to receive and review his own statements to ensure the absence of errors, lacks any real application in this case. Huang seeks to exclude reliance on the application in an effort to prevent LINA from relying upon the disclosure duty; she does not seek to prevent LINA from relying on any statement Liu made in his application.

Because the express statutory language in Missouri plainly sets forth delivery of the instrument to the beneficiary as an alternative, rather than an additional duty, and because Huang's public-policy/legislative-intent argument is contrary to the plain language (and inapplicable to the present facts), we reject her arguments. While her arguments are not uncompelling in the abstract, they cannot defeat the plain language of the statute. At a minimum, they cannot establish that LINA abused its discretion when interpreting the plan and denying benefits.

B.    Breach of Fiduciary Duty—Representation

The district court held as a matter of law that the fiduciary-duty claim failed even if an unknown representative from LINA had represented that Liu would qualify for coverage upon submission of an application. The court found this purported representation was not, in fact, untrue because Liu qualified for coverage after submitting his application. The court also found in the alternative that the representation was not material, or reliance upon the representation was unreasonable, because the representation referenced the need for an application and said nothing that might excuse compliance with conditions in the application.

-11-

The Supreme Court in Cigna Corp. v. Amara, 131 S. Ct. 1866, 1881 (2011), recognized that an equitable claim for surcharge may be permitted in some situations based upon an ERISA fiduciary's breach of a duty towards a covered employee. The Court also noted that "detrimental reliance" is not always required to prove an equitable claim alleging a breach of fiduciary duty. Id. Rather, "[t]o the extent any such requirement arises, it is because the specific remedy being contemplated imposes such a requirement." Id. To explain when such proof would and would not be required, the Court stated, "[A]ctual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents." Id.

Here, the harm alleged is of the type that requires reliance. Huang does not allege harm in the form of a loss of an ERISA-protected right. Rather, she alleges specifically that she and Liu relied upon the representation when deciding to let a different policy lapse. To prove her claim, however, the reliance must be reasonable and the statement by the fiduciary must be material. Kalda, 481 F.3d at 644 ("a *substantial likelihood* that it would mislead a *reasonable* employee in the process of making an adequately informed decision") (emphasis added) (quoting Krohn, 173 F.3d at 551).

We agree with the district court that reliance on the representation in this case was not reasonable. First, the questions in the application seeking health information were routine questions to identify health concerns that might trigger further inquiry. The ongoing duty to report changes in health post-application simply ensured the answers to the questions in the application remained current until the time of policy issuance. There is nothing unclear or unusual about these written requirements, and these requirements are consistent with the language of the summary plan description stating that "evidence of good health may be required to enroll." Second, the representation Huang relies upon is a vague oral representation from an unknown

-12-

source uttered at an unidentified time that does not speak to the actual basis for coverage denial.

Here, the clarity and pedestrian nature of the written requirements, coupled with the uncertainty and vagueness surrounding the purported oral representation, establish that the district court was correct to deem any reliance on the oral representation unreasonable. Cf. Murphy v. FedEx Nat'l LTL, Inc., 618 F.3d 893, 900 (8th Cir. 2010) ("We have held that an estoppel-based FMLA claim cannot succeed based on vague representations, the reason being that a reasonable person would not be entitled to rely on those representations.").[4]

C.      Breach of Fiduciary Duty–Application Clarity/Format

Finally, we agree with the district court that, as a matter of law, the application and summary plan description adequately and fairly presented to Liu and Huang the requirements for supplemental insurance. The document was clear. As already noted, it was a short, 2 ½ page document. The final half page contained scant text, but, as quoted above, stated than an applicant "may need to provide more medical info," "may need to take medical tests and report the results," and "must report any change

_____

[4]LINA also argues that, as a matter of law, an equitable claim based on oral representations cannot succeed where the oral representations are contrary to express plan or application language. We need not in this appeal identify the outer limits of permissible equitable claims against plan administrators. Even if we were to conclude as a general matter that an oral statement contrary to written plan or application language might, in some circumstances, support equitable or fiduciary-duty claims for relief (relief of a type different from plan benefits), the purported representation in this case could not.    See Amara, 131 S. Ct. at 1878–80 (not addressing oral representations, but clarifying that "other appropriate equitable relief" in 29 U.S.C. § 1132(a)(3) may be available for breach-of-fiduciary-duty claims); Silva v. Metro. Life Ins. Co., 762 F.3d 711, 723–27 (8th Cir. 2014) (not addressing oral representations, but applying Amara).

in . . . health that happens before the insurance is effective." This duty was not buried in a lengthy document nor hidden in text smaller than the balance of document. It was sandwiched conspicuously between a line where Liu was required to write his name and social security number and a signature block where Liu and Huang signed and dated the policy. In addition, the section at issue was offset with a clear header, and the font size, while small, is readable even in a copied form provided to our court. No reasonable jury could find a breach of fiduciary duty based on the appearance of the application. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986) (stating that the inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____