# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1763

_____

James Boyd

*Plaintiff - Appellant*

v.

ConAgra Foods, Inc.

*Defendant - Appellee*

_____

No. 16-3443

_____

James Boyd

*Plaintiff - Appellee*

v.

ConAgra Foods, Inc.

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2017
Filed: January 5, 2018
[Published]

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

James Boyd, a former employee of ConAgra Foods, Inc., brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Boyd seeks to recover severance benefits under an ERISA plan that guarantees these benefits when ConAgra, in certain circumstances, materially reduces an employee's position, duties, or responsibilities. Boyd alternatively claims that ConAgra breached its fiduciary duty by misleading him about his employment. The district court[1] granted ConAgra summary judgment on these claims and then granted Boyd his attorney's fees, pursuant to the plan's terms. We affirm.

## I. Background

Boyd previously worked for Ralcorp Holdings, Inc., in the position of "Vice President of Operations." In January 2013, ConAgra purchased Ralcorp through a corporate acquisition. Following this acquisition, ConAgra retained Boyd as an employee, changing his job title to "Vice President of Manufacturing." ConAgra also assumed Ralcorp's obligations arising from Ralcorp's employee-benefits programs.

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

-2-

As part of his employee benefits with Ralcorp and then ConAgra, Boyd was covered under the "Ralcorp Holdings, Inc. Severance Plan for Exempt Administrative Employees Eligible for the Ralcorp Holdings, Inc. Management Bonus Program" (the "Plan"), which is governed by ERISA. Under the Plan, Boyd is entitled to recover severance benefits after self-terminating his employment within twenty-four months after a "Change in Control," including a corporate acquisition of Ralcorp, based on "Good Reason." The Plan defines "Good Reason" as "any of the following acts by the Company without the prior written consent of the Employee: . . . i) a material reduction in the Employee's position, duties, or responsibilities; or ii) a material adverse change in the Employee's reporting relationships." The Plan further provides, "Notwithstanding anything in this definition to the contrary, an act by the Company shall not constitute 'Good Reason' unless the Employee gives written notice of the same to the Company within 30 days of such act, and the Company fails, within 30 days of such notice, to reverse such act." The Plan's terms give the "Plan Administrator"—that is, Ralcorp and then ConAgra—"'the exclusive discretionary authority to construe and interpret the Plan [and] to decide all questions of eligibility for benefits,' including the discretion to decide whether 'Good Reason' exists."

Boyd alleges that after ConAgra acquired Ralcorp, he "suffered a significant decrease in his responsibilities and his ability to give input on and influence high-level decisions within the company." Boyd contends that these changes gave him "Good Reason," as defined under the Plan, to self-terminate his employment and to recover severance benefits under the Plan. Boyd sent ConAgra four letters asserting that he had Good Reason to self-terminate his employment and to recover severance benefits. He also communicated with ConAgra on several occasions regarding his claim for severance benefits. A summary of those letters and communications are as follows.

In August 2013, Boyd sent ConAgra a letter stating that he believed he had Good Reason based on the material adverse differences between his job as Vice

President of Operations for Ralcorp and the position ConAgra had offered Boyd as Vice President of Manufacturing. Boyd specifically alleged, among other claims, that the new position decreased his authority over hiring and adversely changed his reporting relationships.

After receiving Boyd's August 2013 letter, ConAgra investigated Boyd's allegations. When a Plan participant gives notice of a claim of Good Reason to self-terminate, a committee typically investigates that claim by evaluating the alleged employment changes and determining whether those changes met the Plan's definition of Good Reason. In this case, the investigative committee evaluated Boyd's allegations and concluded that ConAgra had not materially reduced Boyd's employment in such a manner as would qualify as Good Reason. Based on this determination, Amy Ariano, the head of the investigative committee and a Vice President of Human Resources, met with Boyd to discuss his August 2013 letter and the committee's findings. Ariano informed Boyd that the committee had investigated his alleged employment changes and concluded that they did not establish Good Reason under the Plan's terms. Following this meeting, Boyd signed an employment agreement with ConAgra, accepting the position ConAgra had offered him.

In November 2013, Boyd sent ConAgra a second letter detailing additional employment circumstances that he believed further established Good Reason. These additional circumstances included: ConAgra "materially eliminating [Boyd's] capital approval authority" and delegating to a project manager Boyd's project-coordination duties over the "Red Card Project," a project Boyd oversaw. After receiving this letter, the investigative committee considered Boyd's allegations and denied that Good Reason existed.

In December 2013, Boyd sent ConAgra a third letter describing additional circumstances he believed further established Good Reason. Boyd alleged that ConAgra had excluded him from a "Senior Leadership Team Meeting" in November

-4-

2013. The investigative committee considered this allegation and denied that Good Reason existed.

Kelly Schaefer, ConAgra's Vice President of Human Resources for Supply Chain, then met with Boyd over two days in December 2013 to discuss the allegations in his letters. Schaefer met with Boyd at the direction of the investigative committee and used talking points that the committee had prepared. Schaefer informed Boyd that the committee had received his additional letters and had determined that his alleged employment changes did not establish Good Reason. Schaefer did not identify what specifically ConAgra would deem to be a "material" reduction in Boyd's employment that would establish Good Reason. Schaefer also stated that Boyd remained the "Business Owner" for the Red Card Project. According to Boyd, Schaefer failed to inform him that the Red Card Project had been discussed and overhauled at a "Network Optimization Meeting" earlier in the month.

In early January 2014, Boyd sent ConAgra another letter, stating that he would self-terminate his employment with ConAgra at the end of the month. In this letter, Boyd alleged additional circumstances establishing Good Reason to self-terminate: ConAgra had excluded him from the Network Optimization Meeting and from the hiring process for a plant manager at one of the plants Boyd supervised. The committee investigated these claims and concluded that they did not establish Good Reason. Boyd then terminated his employment with ConAgra on January 31, 2014.

In February 2014, Boyd submitted to ConAgra an administrative claim for severance benefits under the Plan, alleging he self-terminated for Good Reason based on the above alleged employment changes. On April 10, 2014, ConAgra—as the Plan Administrator—denied Boyd's claim on two grounds: (i) Boyd failed to terminate his employment within the ninety-day period following the alleged initial existence of Good Reason, a condition precedent under the Plan; and (ii) Boyd did not have Good Reason to self-terminate because he "did not incur a material reduction in his

position, duties or responsibilities or a material adverse change in his reporting relationships." On April 28, 2014, Boyd appealed that decision. And in June 2014, ConAgra upheld its denial of Boyd's claim.

In August 2014, Boyd sued ConAgra under ERISA, 29 U.S.C. § 1132(a)(1)(B) and (a)(3), claiming that he is entitled to severance benefits under the Plan and, alternatively, that ConAgra, as the Plan Administrator, breached its fiduciary duty by omitting and misrepresenting material information in its discussions with Boyd. Boyd and ConAgra each filed a motion for summary judgment. The district court granted ConAgra's motion and denied Boyd's motion. The district court concluded that ConAgra had not abused its discretion under the Plan by denying Boyd's claim for benefits because substantial evidence existed to support its decision. The district court also concluded that ConAgra had not breached its fiduciary duty to Boyd. The district court then granted Boyd's motion for attorney's fees, concluding that the Plan's terms entitled Boyd to these fees because Boyd's claims were not frivolous.

Boyd timely appealed the order granting ConAgra summary judgment, and ConAgra timely appealed the order granting Boyd his attorney's fees. This Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 1291.

## II. Discussion

Under ERISA, a plan participant or beneficiary may file an action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "Where an ERISA plan grants its administrator discretion to decide questions of eligibility for benefits or construe plan terms"—as the Plan does here—"judicial review of the administrator's determinations generally is limited to the abuse of discretion standard." Alliant Techsystems, Inc. v. Marks, 465 F.3d 864, 868 (8th Cir. 2006). When reviewing a district court's grant of summary judgment on such a claim, "[w]e review the grant of summary judgment *de novo*, using the same standard as the

district court, and we view the evidence in the light most favorable to the nonmoving party." Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Gamboa, 479 F.3d 538, 541 (8th Cir. 2007).

The parties here raise three broad issues on appeal. First, Boyd challenges the district court's conclusion that ConAgra, as the Plan Administrator, did not abuse its discretion in denying Boyd's claim for benefits. Second, Boyd challenges the district court's decision that ConAgra, as Boyd's fiduciary under the Plan, did not breach its fiduciary duty by allegedly omitting or misstating material information. And third, ConAgra cross-appeals, arguing that the district court erred in awarding Boyd his attorney's fees because the Plan prohibits awarding attorney's fees for frivolous claims.

## A.     Boyd's Claim for Severance Benefits

The first issue we consider is whether ConAgra, as the Plan Administrator, abused its discretion in denying Boyd's claim for severance benefits. The parties disagree as to the level of deference we must afford ConAgra's decision and whether that decision was in error.

### 1.     Applicable Standard of Review

Boyd first argues that the district court applied an incorrect standard of review because ConAgra's financial conflict of interest necessitated a less deferential standard. As noted above, judicial review of a plan administrator's decision denying a claim for benefits under an ERISA plan similar to the one here generally is limited to the abuse-of-discretion standard. Under this standard, "[t]he administrator's decision should be affirmed if it is reasonable, meaning it is supported by substantial evidence." Green v. Union Sec. Ins., 646 F.3d 1042, 1050 (8th Cir. 2011). In other words, "[the] decision is reasonable if a reasonable person *could* have reached a

-7-

similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Id.

Because, under the Plan here, ConAgra served as the party responsible both for administering the Plan (i.e., the plan administrator) and for paying claims under the Plan (i.e., the plan sponsor), "this dual role creates a [financial] conflict of interest." Metro. Life Ins. v. Glenn, 554 U.S. 105, 108 (2008); accord Manning v. Am. Republic Ins., 604 F.3d 1030, 1038 (8th Cir. 2010). When such a conflict of interest exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Glenn, 554 U.S. at 108; accord Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan, 774 F.3d 1193, 1196 (8th Cir. 2014) (citing Glenn, 554 U.S. at 116–17).

Boyd asserts that a less deferential standard of review governs our review of ConAgra's decision. To be clear, although these two propositions—on the one hand, applying a less deferential standard of review and, on the other hand, considering the conflict of interest as a factor under the abuse-of-discretion standard—appear substantially similar, they are distinct concepts. For his proposition, Boyd cites Woo v. Deluxe Corp., 144 F.3d 1157, 1160–61 (8th Cir. 1998), and its progeny. Under these cases, this circuit permitted "a less deferential standard of review" when the claimant shows "a palpable conflict of interest *or* a serious procedural irregularity existed, which . . . caused a serious breach of the plan administrator's fiduciary duty to [him]." Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 871 (8th Cir. 2008) (alteration in original) (emphasis added) (quoting Woo, 144 F.3d at 1160). This less deferential standard is a "'sliding scale' approach, [whereby] the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." Woo, 144 F.3d at 1162.

The Supreme Court's decision in Glenn, 554 U.S. at 115–16, abrogated Woo to the extent Woo allowed a less deferential standard of review based on *merely* a

conflict of interest. <u>Wrenn v. Principal Life Ins.</u>, 636 F.3d 921, 924 n.6. To the extent Boyd contends that <u>Woo</u> governs because a "conflict of interest influenced ConAgra's decision to deny Boyd's claim and appeal," this argument is foreclosed by <u>Glenn</u>. <u>See Glenn</u>, 554 U.S. at 115–17; <u>see also</u> <u>Cooper v. Metro. Life Ins.</u>, 862 F.3d 654, 660 (8th Cir. 2017) ("[Eighth Circuit] precedent . . . has consistently rejected the notion that the mere presence of a potential conflict of interest is sufficient to warrant a less deferential standard.").

Boyd also argues that <u>Woo</u> governs because there was a procedural irregularity when Schaefer, who met with Boyd about his Good Reason letters, misled him by falsely stating that he retained decision-making authority over the Red Card Project. "Our circuit has not definitively resolved the impact of <u>Glenn</u> on the '*procedural irregularity* component'" of <u>Woo</u>. <u>Waldoch v. Medtronic, Inc.</u>, 757 F.3d 822, 830 n.3 (8th Cir. 2014) (quoting <u>Wrenn</u>, 636 F.3d at 924 n.6). We need not address the validity of that component, however, because Boyd has failed to show Schaefer's statement was a "serious procedural irregularity." <u>Woo</u>, 144 F.3d at 1160. Notwithstanding the veracity of Schaefer's statement, Boyd has not shown that the statement significantly diverged from the administrative *procedures* involved when the Plan Administrator considered this type of claim. <u>See id.</u> at 1161 (concluding that failing to investigate an ERISA plan beneficiary's claim of disability was a procedural irregularity). Boyd therefore has failed to show that a less deferential standard of review governs.

Although we do not apply a less deferential standard of review, ConAgra's financial conflict of interest is still a relevant factor we consider in determining whether ConAgra abused its discretion in denying Boyd's claim. The weight afforded this factor necessarily depends on the facts of the case. Some facts this circuit previously recognized as increasing that weight include: "that the insurer's claims review process was tainted by bias; that the medical professionals who reviewed the claim for [disability] benefits were employed by the insurer, or that their

compensation was tied to their findings; and that the insurer acted as little more than a rubberstamp for favorable medical opinions." Cooper, 862 F.3d at 661. But when the record "contains no evidence about [the plan administrator]'s 'claims administration history or its efforts to ensure that claims assessment is not affected by the conflict,' [the court] only 'give[s] the conflict some weight.'" Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh, 863 F.3d 1036, 1039 (8th Cir. 2017) (quoting Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010)). In short, a financial conflict of interest is only a factor—the weight of which depends on the facts of the case. See Glenn, 554 U.S. at 115. We thus consider this factor in our analysis of Boyd's claim, which now follows.

### 2. Good Reason Analysis

Boyd next contends that ConAgra, as the Plan Administrator, abused its discretion by denying his claim for benefits, based on two grounds. Boyd first asserts that ConAgra abused its discretion by denying his claim on the ground that it was untimely. The Plan provides that to be eligible to apply for severance benefits, a qualifying employee must self-terminate "during the 90-day period following the initial existence of Good Reason." ConAgra concluded that Boyd had failed to timely self-terminate because he filed his first Good Reason letter in August 2013 but he did not self-terminate until January 2014. In fact, in his February 2014 claim for benefits and his April 2014 appeal of ConAgra's decision, the allegations that Boyd cited as establishing Good Reason occurred in November and December of 2013—i.e., fewer than ninety days before Boyd self-terminated on January 31, 2014. Nevertheless, ConAgra concluded that Boyd had failed to timely self-terminate. The district court concluded that this was an abuse of discretion. Notwithstanding the merits of Boyd's argument on this claim, we need not address it because ConAgra ultimately succeeds based on its determination that Boyd did not have Good Reason.

Boyd also argues that ConAgra, as the Plan Administrator, abused its discretion in denying his claim on the ground that Boyd did not have Good Reason to self-terminate. In his administrative appeal, Boyd alleged only three adverse changes in his employment: (i) ConAgra excluded Boyd from the Senior Leadership Team Meeting in November 2013; (ii) ConAgra excluded Boyd from the Network Optimization Meeting in December 2013; and (iii) ConAgra excluded Boyd from the decision-making process for the replacement of a plant manager at a plant Boyd supervised. We view these allegations, as we must, in the light most favorable to Boyd.[2]

We hold that ConAgra did not abuse its discretion in determining that Boyd lacked Good Reason to self-terminate. The record demonstrates that, in his prior position with Ralcorp, Boyd would not have been invited to the Senior Leadership Team Meeting. ConAgra also explained that it did not invite Boyd to the Network Optimization Meeting because the meeting focused on topics outside of Boyd's responsibilities. Finally, in both Boyd's prior position and his position with ConAgra, Boyd's supervisor had the authority to make decisions—without Boyd's involvement—regarding the replacement of a plant manager. ConAgra thus

---

[2] Now in this suit, Boyd also alleges that ConAgra increased the number of supervisors between Boyd and the Chief Executive Officer; that, at the Network Optimization Meeting, ConAgra materially changed the Red Card Project, which Boyd oversaw, without his input; and that ConAgra delegated to another employee Boyd's project-coordinator duties over the Red Card Project. But, as ConAgra asserts and the district court found, Boyd did not raise these additional allegations in his appeal of ConAgra's denial of his claim for benefits. Boyd therefore failed to exhaust his administrative remedies surrounding these allegations, and he is barred from raising the allegations now. See Chorosevic v. MetLife Choices, 600 F.3d 934, 942 (8th Cir. 2010) ("It is well-established that when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust her administrative remedies bars her from asserting *any unexhausted claims* in federal court." (quoting Burds v. Union Pac. Corp., 223 F.3d 814, 817 (8th Cir. 2000))).

concluded that Boyd's alleged employment changes did not establish Good Reason. Because "a reasonable person *could* have reached a similar decision," Cooper, 862 F.3d at 660, we must accept ConAgra's decision. Boyd therefore has failed to show that ConAgra's decision was unreasonable or was not supported by substantial evidence.

Although we also consider as a factor in our analysis the conflict of interest underlying the Plan, this does not change our conclusion in this case. In advocating greater weight for this factor, Boyd argues that ConAgra's conflict of interest is evinced by its purportedly erroneous determination that Boyd did not timely self-terminate. This argument, however, fails to persuade us that ConAgra's decision was unreasonable. And as ConAgra introduced some testimony describing the procedural safeguards surrounding its administration of the Plan, this decreases the weight we afford the conflict-of-interest factor. See Glenn, 554 U.S. at 117 ("[The conflict of interest] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . .").

Accordingly, because ConAgra's decision was reasonable, we hold that ConAgra did not abuse its discretion in denying Boyd's claim for benefits.[3]

---

[3]Boyd also contends that the district court improperly required him to show a material reduction in his position, duties, *and* responsibilities, though the Plan requires a showing on only one—not all three. Boyd's argument is misguided. Regardless of the scope of the district court's conclusion, we review that conclusion de novo and conclude that ConAgra did not abuse its discretion in determining that it had not materially altered Boyd's job responsibilities, position, *or* duties.

## B.    Boyd's Claim for Breach of Fiduciary Duty

The district court concluded that ConAgra did not breach its fiduciary duty to Boyd by misstating or omitting certain material information when communicating with him.  We agree.

An ERISA fiduciary—that is, a person who exercises certain discretionary authority or control over an ERISA plan, see 29 U.S.C. § 1002(21)(A)—must "discharge [its] duties with respect to [the] plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).  This includes an "obligation to deal fairly and honestly with all plan members."  Shea v. Esensten, 107 F.3d 625, 628 (8th Cir. 1997) (citing Varity Corp. v. Howe, 516 U.S. 489, 506 (1996)). "Accordingly, a fiduciary may 'not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan' when discussing a plan."  Kalda v. Sioux Valley Physician Partners, Inc., 481 F.3d 639, 644 (8th Cir. 2007) (quoting In re Xcel Energy, Inc., 312 F. Supp. 2d 1165, 1176 (D. Minn. 2004)). In asserting a breach of fiduciary duty, Boyd must show that he reasonably relied, to his detriment, on a material misrepresentation or omission.  See Yafei Huang v. Life Ins. Co. of N. Am., 801 F.3d 892, 900 (8th Cir. 2015); see also Kalda, 481 F.3d at 644 ("A statement is materially misleading if there is 'a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding . . . benefits to which she might be entitled.'" (quoting Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 551 (6th Cir. 1999))).

Boyd contends that ConAgra breached its fiduciary duty when Schaefer, acting at the direction of the investigative committee and therefore as a fiduciary, misled him about his authority over the Red Card Project.  Boyd specifically alleges that Schaefer assured him he retained authority and control over the project and that she failed to inform him that the project had been changed at the December 2013 Network

-13-

Optimization Meeting. Boyd also alleges that he relied, to his detriment, on Schaefer's representation by self-terminating his employment and then seeking severance benefits. By misleading Boyd about his authority over the Red Card Project, he contends, Schaefer "caused him to delay his self-termination, and ultimately to self-terminate without the necessary information that ConAgra withheld from him."

Even assuming Schaefer was Boyd's fiduciary, we conclude that Boyd has failed to show his purported reliance was reasonable. To support his allegation that the Red Card Project was changed at the Network Optimization Meeting, Boyd highlights several statements from a PowerPoint presentation presented at the meeting. In fact, the district court found that Boyd had received a copy of this PowerPoint on January 23, 2014 (about one month after Boyd's meeting with Schaefer). Boyd thus was equipped with this information—and would have known about the purported changes to the Red Card Project—both before he self-terminated on January 31, 2014, and before he submitted his administrative claim for severance benefits on February 7, 2014. Because Boyd possessed this information before he purportedly acted in reliance on Schaefer's misstatement, he has failed to show that he reasonably relied, to his detriment, on a material misrepresentation or omission. See Yafei Huang, 801 F.3d at 900. Boyd's claim that ConAgra breached its fiduciary duty through Schaefer's conduct therefore fails.

Boyd also states that he "was not given any guidance concerning the definition of Good Reason or what ConAgra considered a material reduction in job duties, responsibility or authority." In so stating, Boyd appears to argue that this omission was a breach of ConAgra's fiduciary duty. Under ERISA, "a fiduciary has a duty to inform when it knows that silence may be harmful, and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." Kalda, 481 F.3d at 644 (citations omitted).

-14-

Here, however, there was no such silence. The Plan defines the term "Good Reason," and this definition includes certain "material" adverse changes in employment. Although the term "material" was not defined in the Plan, ERISA requires only that a Plan be "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). The average plan participant reasonably could understand the defined provisions for "Good Reason" and the common meaning of "material." Boyd, in fact, concedes this in his brief, stating: "Fortunately, the plain language of the Plan clearly lists events which would constitute the requisite Good Reason." Boyd therefore has failed to demonstrate that ConAgra breached its fiduciary duty by not further defining these terms or by listing events that qualify as Good Reason.

## C.    ConAgra's Challenge to the Attorney's Fees Award

The final issue on appeal is whether the district court erred in granting Boyd the attorney's fees he incurred in pursuing his claims. ConAgra contends that the district court erred in granting these attorney's fees because the Plan prohibits awarding attorney's fees for frivolous claims and because Boyd's above claims were frivolous. This Court reviews the legal issues surrounding an award of attorney's fees de novo. Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1112 (8th Cir. 2013).

The Plan entitles Boyd to recover his attorney's fees incurred in pursuing his claims, unless the claims were frivolous:

> In connection with or after a Change in Control, the Company [ConAgra] shall pay to the Employee [Boyd] as incurred all legal and accounting fees and expenses incurred by the Employee in seeking to obtain or enforce any right or benefit provided by this Plan under Article II(B), unless the Employee's claim is found by a court of competent jurisdiction to have been frivolous.

-15-

In another context, the Supreme Court has clarified that a claim is frivolous when it lacks "any rational argument in law or fact." Neitzke v. Williams, 490 U.S. 319, 323 (1989) (citation omitted).

The district court concluded that Boyd's claims were not frivolous. We agree. Although we ultimately reject Boyd's claims against ConAgra, his claims were not lacking "any rational argument in law or fact." Id. Although we did not address Boyd's claim regarding ConAgra's determination that Boyd was ineligible to apply for benefits because his self-termination was untimely, we believe there was a substantial—or at least arguable—basis for this claim. The district court, in fact, concluded that ConAgra had abused its discretion in deeming Boyd's self-termination untimely. Further, the facts surrounding Boyd's breach-of-fiduciary-duty claim provided an arguable basis that Schaefer had misled or omitted certain material information. For these reasons, we affirm the district court's ruling awarding Boyd his attorney's fees incurred in pursuing these two claims.[4]

### III. Conclusion

For the foregoing reasons, this Court affirms the district court's judgment.

———————————————

[4]As neither party raised the issue in its opening brief, we do not address the district court's ruling on ConAgra's motion for attorney's fees and costs under 29 U.S.C. § 1132(g)(1). See Food Mkt. Merch., Inc. v. Scottsdale Indem. Co., 857 F.3d 783, 789 (8th Cir. 2017) ("'As a general rule, [this court] will not consider arguments raised for the first time in a reply brief,' and declines to do so here." (alteration in original) (quoting Barham v. Reliance Standard Life Ins., 441 F.3d 581, 584 (8th Cir. 2006))).